## Whitney vs. Peay, Rec'r, et al.

The state issued her bonds for the use of the Real Estate Bank, the bonds being prohibited by law from being sold for less than the par value thereof: the agents of the bank hypothecated or pledged them to the North American Trust and Banking Company for less than their par value, and the money advanced upon them was appropriated by the bank: the company transferred them, for an advance upon the amount for which they were pledged, to Holford & Co.: afterwards, in a proceeding against the company for insolvency, the debt due from the bank to the company for the money advanced on the bonds, was sold: by the receiver in chancery, under the direction of the court, to the complainant: the bonds were in the possession of Holford & Co., under the transfer to them, and they were charged with their estimated value in the settlement of their claims against the company. *Held:*.

1. That, under adjudications entitled to respect, the disposition of the bonds at less than their par value, might be declared illegal and void; but as the bank appropriated to its use the money advanced upon them, it is but just to conclude that she is bound in equity and good conscience to repay the money, with interest, upon a re-delivery of the bonds.

2. *Hypothecation,* which is a term of the civil law, is that kind of pledge in which the possession of the thing pledged remains with the debtor, and in this respect, is distinguished from *pignus,* in which possession is delivered to the creditor or pawnee; and so the contract in this case was a pledge, and if valid in equity, the company held the bonds in pledge for the repayment of the money advanced, and the bank is entitled to have the bonds re-delivered on payment of the debt.

3. A pawnee may sell or assign all his interest in the pawn—in which case the pawnee's lien cannot be separated either from the possession of the goods or the debt, and passes with the possession to the assignee; and so when the North American Trust and Banking Company transferred the bonds to Holford & Co. in pledge, the debt due the company from the bank passed by the transfer, and could not be sold as the debt of the company.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. Fairchild, Chancellor.

Watkins & Gallagher, for appellant.

The ground relied on for the appellant in this case is, that although it might be true that by the hypothecation of the 500 Real Estate Bank bonds by the North American Trust and Banking Company, to Holford, he became subrogated in equity to any claim of the Trust Company against the Real Estate Bank, for moneys advanced upon them in the first instance; yet Holford was a party to the suit brought in New York for marshaling and administering the assets of the Trust Company, among its various creditors, and was bound by any decree and order made during the progress of the cause. He appeared and proved his claims, including those 500 Real Estate Bank bonds, and got his dividend. The court there set aside as a fraudulent preference, a conveyance made to him by the Trust Company of various assets, including the claim of the Trust Company against the Real Estate Bank for this $125,000, advanced in order to secure Holford for the advances he had made to the Trust Company on these same bonds. So that Holford stands on this record in the attitude of getting his pro rata of the proceeds of the sale of that claim to Whitney, and yet claiming that he is entitled to the entire fund.

HEMPSTEAD, and GARLAND & RANDOLPH, for appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

On the 1st of January, 1840, the state issued to the Real Estate Bank, in pursuance of its charter, 500 bonds for $1000 each, bearing interest, etc., to be sold at par, for the purpose of procuring banking capital, etc.

On the 7th of September, 1840, the cashier of the bank, with the approval of two of the bond commissioners, entered into a contract with the North American Trust and Banking Company, of New York, by which that company agreed to loan to the Real Estate Bank $250,000, upon a pledge or *hypothecation* of the bonds above referred to, which sum was to be advanced by installments and repaid at stipulated periods, with interest, etc.

In pursuance of this contract the bonds were delivered to the

North American Trust and Banking Company, and it is admitted that the Real Estate Bank received, through its agents, and appropriated to its use, the sum of $121,336.59. No further sum was advanced.

About the 1st of December, 1840, the North American Trust and Banking Company pledged the same bonds to James Holford & Co., bankers of London, for a loan of $325,000. Afterwards, Holford became the sole owner of the debt, and holder of the bonds so pledged, by transfer from his partner.

Afterwards, upon a bill filed in the chancery court of New York, by George Manning Tracy, a stockholder and creditor, against Thomas G. Talmage, president of the North American Trust and Banking Company, alleging its insolvency, etc., it was placed in liquidation; and David Leavitt was appointed by the court, a receiver in chancery, to settle its affairs.

Pending the administration of the trust, James Holford prayed the court, by petition, that the receiver might be ordered to unite with him in a reference, pursuant to the statute of New York, of six claims presented by him against the banking company; and the claims were accordingly referred to three referees, appointed by the court (two counsellors at law and one merchant,) with instructions to ascertain and report, in case they found any thing due from the company upon the claims, what collateral securities had been legally assigned for the security of the sums so found due from the company, and the value thereof; and that the referees deduct from the amount so found due to Holford, the ascertained value of all such collateral securities.

The referees, after a protracted and laborious investigation, reported that the company was indebted to the American administrators of Holford, (he having died pending the investigation,) upon the six claims referred to them, for principal and interest, to 1st October, 1857, in the sum of $895,896.42.

Included in this sum was the amount advanced by Holford to the company, upon the pledge of the 500 Arkansas bonds.

The referees further reported that certain collateral securities, particularly described by them, had been legally assigned by the

company to Holford, to secure the payment of the sum found due to his estate, as above; the aggregate value thereof was ascertained to be $456,200 (the separate value of each collateral security being ascertained and stated,) which being deducted from the sum found to be due to his administrators from the company, left a balance in their favor of $439,696.42.

Among the collateral securities reported by the referees as having been legally assigned to Holford, by the company, were the 500 Arkansas bonds, for $1000 each, which they ascertained to be of the actual value of $425,000, on the 1st October, 1857.

The report of the referees was approved and confirmed by the court, and a decree entered in favor of Holford's administrators for the balance found to be due them upon their claims, after deducting the reported value of the collateral securities, to be paid by the receiver out of the assets of the company. And it was further decreed "that the value of the said collateral securities having been duly ascertained and credited upon their said claim, pursuant to the directions contained in the order of reference, the administrators, etc., have become, and are the legal owners of, and legally and equitably possessed of, and well entitled, as such administrators, to all and singular the following bonds, notes, stock, etc., etc., being the collateral securities in said report particularly mentioned and described, that is to say, 500 bonds of the state of Arkansas, numbered, etc., etc., issued to the Real Estate Bank, etc., for $1000 each," etc., etc.

In the meantime Benjamin D. Whitney made a proposition to David Leavitt, the receiver in chancery, etc., to give $2,500, for the debt of the Real Estate Bank to the North American Trust and Banking Company, for moneys advanced by the latter to the former, under the agreement of 7th Sept. 1840, above stated. The proposition of Whitney was reported to the court superintending the administration of the trust, and the court directed the receiver to accept the proposition, and to assign the debt to Whitney upon his paying therefor the sum proposed. A written assignment was accordingly made by the receiver.

Afterwards, Whitney filed a bill in the Pulaski chancery

26          CASES IN THE SUPREME COURT,

Whitney vs. Peay, rec'r, et al.          [DECEMBER

court, against Peay, as receiver in chancery of the assets of the Real Estate Bank, and the English executors and American administrators of Holford, accompanied by voluminous exhibits, alleging and showing the facts above stated, praying a decree against the receiver for the amount of the debt, with interest, assigned to him as above, to be paid out of the assets of the bank; and that the administrators, etc., of Holford be required to assert and litigate their claim, etc., to the 500 Arkansas bonds, etc., and that they be compelled to produce and surrender them for cancellation, etc.

Upon the answer of Peay, containing a demurrer to the bill, and a demurrer interposed for the representatives of Holford, the bill was dismissed, and Whitney appealed to this court.

The 9th section of the charter of the Real Estate Bank, prohibiting the sale of the bonds of the state at less than the par value thereof, it might be held, upon adjudications entitled to respect, that the disposition made of the 500 bonds, in question, by the agents of the bank, to the North American Trust and Banking Company, was a transaction illegal and void. See *The State of Illinois vs. Delafield,* 8 *Paige,* 527—affirmed in *Delafield vs. The State of Illinois,* 2 *Hill,* 160; 26 *Wend.,* 209, 221. But the bank having thought proper to receive and appropriate to its use the money advanced to its agents by the New York banking company, upon a pledge of the bonds, it is but just and reasonable to conclude that the bank thereby became bound in equity and good conscience to repay the money so advanced to it, with interest, upon a re-delivery of the bonds.

To this extent the bank appears to have admitted its liability, by its deed of assignment, in designating the order in which its debts were to be paid, by the trustees, out of its assets, thus:—
" *Sixth,* in paying the principal of the bonds of the state aforesaid, the same being all the bonds of said state ever issued to said bank, except 500 bonds which were hypothecated to the North American Trust and Banking Company, a corporation in the city of New York: and by said North American Trust and Banking

Company, illegally and in violation of their faith, sold or pledged to Holford & Co., of London: *And Seventh*, in paying the amount which was actually received by said bank on the hypothecation of said last mentioned bonds; but upon the contingency, and only in the event that said last mentioned five hundred bonds can be procured and delivered up to said trustees, upon the payment of said sum so actually received, with interest and exchange, or of whatever other amount may be legally due on said last mentioned bonds."

The contract between the agents of the Real Estate Bank and the North American Trust and Banking Company, was not, strictly speaking, an *hypothecation*. *Hypothecation* is a term of the civil law, and is that kind of pledge in which the possession of the thing pledged remains with the debtor, the obligation resting in mere contract without delivery: and in this respect distinguished from *pignus*, in which possession is delivered to the creditor or pawnee. *Burr. L. Dic.*; *Story on Bail.*, sec. 288.

The contract may be properly termed a pledge, which is defined by SIR WILLIAM JONES to be a bailment of goods by a debtor to his creditor, to be kept till the debt is discharged. And by LORD HOLT thus: " When goods or chattels are delivered to another as a pawn, to be security for money borrowed of him by the bailor, this is called in Latin *vadium*, and in English a pawn or pledge." In the Roman law, says Story, it is called *pignus*. Negotiable instruments, choses in action, etc., may, by the common law, be delivered in pledge. *Story on Bail.*, sec. 286–290.

Assuming the contract between the Real Estate Bank and the North American Trust and Banking Company, to have been in equity, a valid one, the company held the bonds in pledge for the repayment of the money advanced to the bank; and the bank was entitled to have the bonds re-delivered to it on payment of the debt.

After the North American Trust and Banking Company transferred the bonds in pledge to Holford & Co., for a larger sum of money than it had advanced to the Real Estate Bank on the faith

of the bonds, did the company still continue to be the owner of the debt due from the Real Estate Bank, so that it could be sold by the receiver of the company, after it was placed in liquidation, to Whitney, and vest in him a right to collect the debt?

The pawnee may sell or assign all his interest in the pawn. If he transfer the pledge to his own creditor, the latter may hold the pledge, until the debt of the original owner is discharged. *Story on Bail.*, secs. 324, 327.

The general rule is, that liens at law on personal property exist only in cases where the party entitled to them has the possession of the goods : and if he once part with the possession, after the lien attaches, the lien is gone. Being in the nature of a security resting on property for the payment of a debt, the pledgee's lien cannot be separated either from the possession of the goods, or from the debt; it is collateral to the debt, and it must accompany the possession. His interest may be transferred : it will pass at his death to his personal representatives, or he may, it seems, assign over his interest in the pawn so that the assignee will take his rights and responsibilities under the contract of pledge. *Edwards on Bail.*, 210; *Jarvis vs. Rogers*, 15 *Mass.*, 408; *Curtis et al. vs. Leavitt*, 1 *Smith (New York) R.*, 103.

It follows that when the North American Trust and Banking Company transferred the Arkansas bonds to Holford & Co., in pledge, the debt due to the company from the Real Estate Bank, resting upon and adhering to the bonds—the pledge—passed also to Holford & Co., by the transfer.

After the transfer was made, the North American Trust and Banking Company could not have compelled the Real Estate Bank to pay to it the money advanced upon faith of the bonds, because the company had parted with the bonds, and was not in a condition to surrender them to the Real Estate Bank, on payment, as by the terms of the contract of pledge it was obliged to do.

In what better condition does Whitney stand, who purchased

the debt of the receiver of the company, in liquidation? Did he purchase a greater right than the company had? We think not.

After the bonds were transferred in pledge to Holford & Co., the Real Estate Bank had a right to redeem them by paying to them the money advanced to the bank by the North American Trust and Banking Company, with interest, unless indeed Holford & Co., had a right to claim a larger sum by virtue of circum stances connected with the transfer of the bonds to them, which placed them in the attitude of innocent holders, entitled to pro. tection, which is not a question for us to decide in this case.

But the appellant, Whitney, who seems to have been an adventurer in purchasing the debt due from the Real Estate Bank, and who purchased it for a trifling sum compared to the magnitude of the debt and interest, would, if the prayer of his bill was granted, compel the representatives of Holford to surrender the bonds to the receiver of the Real Estate Bank, and receive nothing, while he would receive the full amount due from the bank, though the very court which ordered his proposition to purchase the debt to be accepted, had charged Holford's administrators with the market value of the bonds, and decreed that they had been legally transferred to him, and that his administrators were well entitled to hold them, etc.: and this decree was made after the deed of assignment referred to in the bill, and supposed by appellant's counsel to cut some figure in the case, had been set aside for fraud.

The decree of the court below must be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.