SWEENY, Appellant, v. UNITED UNDERWRITERS COMPANY, Respondent.

(137 N. W. 379.)

1.  **Corporation—Officer—Agency for Conditional Sale—Ultra Vires —Burden of Proof.**

    Action against a corporation to rescind a stock sale contract under an option reserved to plaintiff, purchaser. **Held,** that if the corporation's secretary and manager was not authorized to make the contract, other than as such authority might be affected by statute, the burden of proof was upon the corporation to establish that fact.

2.  **Corporation — Conditional Stock Sale — Ultra Vires — Purchase Money Suit.**

    Sections 425, 436, Civ. Code, authorizing a corporation to hold its own stock on certain conditions, and prohibiting withdrawal of any part of its capital stock, etc., were enacted solely for protection of creditors and stockholders; and **held,** that, conceding that a contract by a corporation in selling stock, to repurchase it at buyer's option is ultra vires, it does not follow that the statute renders void the condition under which the purchaser may rescind. **Held,** further, that if such condition were void, yet the corporation cannot, where there is failure of consideration under the contract, repudiate such option and refuse to return the purchase money.

(Opinion filed July 26, 1912.)

Appeal from Circuit Court, Codington County. Hon. C. X. SEWARD, Judge.

Action by Polly L. Sweeney against the United Underwriters Company, for rescission of a conditional sale of corporate stock by defendant to plaintiff, and for recovery back of purchase money. From a judgment for defendant entered upon a directed verdict, and from an order denying a new trial, plaintiff appeals. Reversed.

*Charles Schull* and *Wilbur S. Glass,* for Appellant.

The plaintiff contends on this appeal that at the time of the conversations between Peace and this plaintiff on the Saturday evening, December 7th, when Peace induced her to purchase this stock and on the Sunday morning following when she turned over her deposit certificate to him for the company and took the company's receipt therefor and the check for the difference that it was an executory agreement to subscribe for or purchase ten shares of the capital stock of this defendant corporation, that these agreements made by Peace, to pay the dividends and to permit her to return her stock and that the company would repay the money were a material and substantial part of the consideration and inducement to her to part with her money; that she parted with her money and entered into this agreement relying on and being induced by these promises and agreements.

Further, that at the time of the conversation wtih Ellsworth in the office of the defendant company, wherein this defendant through it's secretary and general manager, Ellsworth, was notified of all the agreements made by their man Peace, while the said transaction was still executory and while they were holding this plaintiff's money as trustee, the title to which did not pass to the defendant company till the transaction was executed by the issuance and delivery of the stock to the plaintiff, this defendant gave this plaintiff no notice of it's dissent from any of the promises and agreements made by Peace, but on the contrary, by the statements of its secretary, and by the subsequent acts of the defendant company, in retaining this money and issuing the certificates of stock to this plaintiff after actual notice and knowledge of the promises, agreements and representations under which Peace had obtained possession of this money, the defendant in all things ratified and confirmed all the agreements and promises that Peace had made, which were in fact affirmatively confirmed by Ellsworth, (see testimony of Michael Sweeney on this feature where he testified that Ellsworth said: "Any time we was not satisfied with our investment we could get our money back." Page 18 of transcript, or 33 of record as paged by the clerk), the promises, agreements and representations of Peace became the

promises, agreements and representations of the defendant corporation, and the corporation voluntarily accepted the benefits of a transaction and are thereby bound by all of the obligations arising thereform, all of which were communicated to it through it's secretary and general manager Ellsworth.

Section 121, Civil Code, provides: "A voluntary acceptance of the benefits of a transaction is equivalent to a consent to all of the obligations arising therefrom so far as the facts are known or ought to be known to the person accepting."

"The acceptance of the benefits of an unauthorized act estops the principal from denying authority." Morris v. Ewing, (N. D.) 76 N. W. 1047.

"Where a contract is an entirely and wholly unauthorized act, the principal taking the benefit must take with it the obligation that forms a part of it." Syllabus: Biedman v. Goodell, 9 N. W. 900.

"The unauthorized acts of an agent when ratified by the principal is as binding as though within the agent's authority." Hernote v. Kersey, (Ia.) 28 N. W. 468.

"The principal cannot affirm such act as to part and reject it as to the remainder." Strassner v. Conklin, (Wis.) 11 N. W. 254.

If this company claimed that Pease had not original authority to bind the defendant corporation by the promises he had made, then it was the duty of Ellsworth, the secretary and manager of the company, on being informed by Sweeney of the agreements that Peace had made with his wife and under which she had parted with her money, to have informed the Sweeneys that the company would not agree to any promises or agreements of that nature and to have returned the money while the transaction was open and the stock unissued and his failure so to do, and the retention of the money estops them now from denying liability. Had he done so the deal would at once have been off and no harm would have come. Vent et al., v. The Duluth Coffee and Spice Co., reported in 67 N. W., page 70 (Minn.), and also in 4th Am. & Eng. Corporation cases, N. S. 142; Brown v. St. Paul Plow Company, 64 N. W. 66, being also a Minnesota case.

As to the representations as to the value of the stock while there is no direct evidence as to the value there is sufficient indirect evidence from the facts and circumstances developed on the trial, from which the jury, had they been permitted, could have reasonably drawn the inference that this stock was, at the time of this transaction, and has been at all times since, as alleged in the complaint, worthless and of no value whatever. It is merely "wild cat" or "blue sky" stock, and it is very certain that had the corporation made the representations through the mails that were made orally by Pease and confirmed by Ellsworth to this plaintiff, the corporation would have been denied the use of the mails for fraud.

There is no presumption that the stock of a corporation is worth it's par or face value. Stenagaard v. St. Paul, etc., (Minn.) 17 L. R. A. 575.

"The authorities agree that as against a corporation guilty of fraud the subscriber has the right to rescind and recover back his payments. If rights of creditors have intervened or the corporation itself was not responsible for the fraud, the right of the subscriber is not so clear." Stewart v. Rutherford, 74 Ga. 436.

As between the original parties when it appears that one has been guilty of intentional and deliberate fraud by which to his knowledge the other has been misled and influenced in his action, he can not escape the legal consequences of his fraudulent acts by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable care and diligence. Linnington v. Strong, 107 Ill. 302; Note 37, L. R. A. to main case Fargo Gas Light and Coke Co. v. Fargo, etc., Id.

We think it would be waste of time to pursue this further; it is too elementary to require discussion. Stewart v. Rutherford, 74 Ga. 436.

*Loucks & Mather,* and *Hanten & Hanten,* for Respondent.

That ratification can only be made, upon full knowledge of the facts, see Garliek v. Morley, 132 N. W. 61.

The respondent's position is, further, that the express provisions of the statutes of this state take this case out of the rule as laid down in one or two other jurisdictions, particularly

Minnesota, and that in this state at the very outset the two agreements upon which the plaintiff lays the most stress, namely, the agreement to pay a certain rate of dividends and the agreement to repurchase the stock, are absolutely beyond the powers of any agent or officer to make, and are in truth and in fact, beyond the power and authority of the corporation itself, even if they had been made by the stockholders of the corporation itself, which it must be conceded was not done in this case. Section 425 of the Revised Civil Code, 1903.

This statute by necessary implication, prohibits any agreement for the repurchase of any of the stock of the corporation, except in the manner therein stated and the evidence wholly fails to show any such condition. Propositions by the directors to do things which they are prohibited by statute from doing, cannot be relied on by subscribers as misrepresentations which will relieve them from liability. Peters v. Lincoln & N. W. Ry. Co., 14 Fed. Rep. 319.

But knowledge acquired or possessed by an officer or agent of a corporation, otherwise than in the course of his employment, or in relation to a matter which is not within the scope of his authority, is not notice to the corporation.

Section 720, pages 2197 to 2199, Clark & Marshall, Corporations, citing cases from nearly all the states in the United States, including the National Bank of Commerce of Pierre v. Feeney, 9 S. D. 550.

Section 436 of the same Code provides: "The directors of corporations must not make dividends except from the surplus profits arising from the business thereof, nor must they divide, withdraw or pay to the stockholders or any of them, any part of the capital stock. And the same section makes a violation of any of the said provisions, punishable by personal liability upon the part of the directors so acting. This section, it seems to us, is conclusive upon the question that a person has no right to rely upon the statement as to what dividends will be paid and particularly where the stock issued is common stock, containing no such agreement, as the stock in question, in this case is shown to be.

Persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound to ascertain not only the fact of the agency, but the extent of the agency, and in case the authority is controverted, the burden of proof is upon them to establish it. As was said by this court, the proposition is so elementary as to neither justify further elucidation nor the citation of supporting authority. Kirby v. Western Wheel Scraper Co., (S. D.) 70 N. W. R. 1053; Wade v. Ellis, (S. D.) 57 N. W. R. 225; Section 276 Mecham's Agency; Corey v. Hunter, (N. D.) 84 N. W. R. 570.

Persons dealing with corporations are bound to take notice of their powers. 10 Cyc. 1148.

There is absolutely no evidence in the case to show that the stock in question is not of the value which it is claimed it was represented to be.

That a stockholder may relieve himself from liability by proof that he was misinformed as to the effect of his contract when he made it, would be a disastrous doctrine. Upton v. Tribilcock, U. S. 23 L. Ed. 203; Andrus v. St. Louis Smelting and Refining Co., U. S. 32 L. Ed. 1054; Smith v. Richards, U. S. 10 L. Ed. 48.

Assuming that the representations were made as to the value of the stock, as to what dividends would be paid in the future, and as to a repurchase of the stock at a future time, and conceding for the purpose of argument only, that such representations were made, the well settled law of this country and of England holds that such statements do not constitute representations upon which a prospective purchaser has a right to rely, and do not constitute such misrepresentations as will entitle a person relying upon them, to predicate fraud or a rescission thereon. In support of this statement of the law, we beg to cite: 26 A. & E. Ency., 2nd. Ed., page 944, also pages 942-3 and 5, and exhaustive notes in 33 L. R. A. 728-732-736; 37 L. R. A. 604-607; Frenzel v. Miller, (Ind.) 10 A. R. 71; Smith v. Richards, U. S., supra. See also the other decisions of the U. S. Supreme Court cited, supra; St. Jahns Mfg. Co. v. Munger, (Mich.) 29 L. R. A. 63, on pages 65-66.

"It goes without saying that an action for false and fraudulent representations can never be maintained upon a promise or a prophesy." Union Pacific Railway Co. v. Barnes, 12 C. C. A. 50; Fry v. Day, 97 Ind. 348; Kimber v. Young, 70 C. C. A. 178; Ellis v. Andrews, (N. Y.) 15 A. R. 379; Warner v. Benjamin, (Wis.) 62 N. W. R. 179; Belcher v. Costello, 122 Mass. 189; Kimball v. Banks, (Mass.) 11 N. E. 113; Deming v. Darling, (Mass.) 20 N. E. 107; Johnson v. Stevenson, U. S. 23 L. Ed. 1009; Gordon v. Butler, U. S. 26 L. Ed. 105; Dillman v. Natlehoffer, (Ill.) 7 N. E. 81; Lee v. McClelland, (Cal.) 52 Pac. 300.

That the agreements in question here, if the same had been made, would be void, that is, that an agreement to repurchase the stock at any time that the purchaser was not satisfied with it, would be void as a fraud upon the other stockholders, even in the absence of the statutory provisions found in this state, see exhaustive arguments and citations by the Supreme Court of Illinois in the case of Melvin v. LeMar Ins. Co., 80 Ill. 446, 22 A. R. 199.

WHITING, J.   This action was brought in the municipal court of the city of Watertown, and was before the court upon an appeal from an order overruling a demurrer to the complaint. The decision of this court will be found in 25 S. D. 1, 124 N. W. 1107, wherein it was held that the action was one based upon an alleged rescission of a contract. It would appear that the action was afterwards tried in the municipal court and then in the circuit court. Upon the last trial, after plaintiff's evidence had all been submitted, the defendant moved for a directed verdict. This motion was granted, verdict and judgment entered for defendant, and a motion for new trial denied. The plaintiff has appealed to this court from such judgment and order denying a new trial.

It is the claim of the plaintiff that she was induced to purchase certain shares in defendant corporation through certain false representations in relation to the real value of said shares, and in relation to the dividends which said corporation would pay thereon. The plaintiff further claims that one of the conditions

of said purchase, and a material consideration inducing her to make such a purchase, was a promise on the part of the agent of whom she purchased said stock, whereby it was agreed that, if she became dissatisfied with such purchase, she might return the said stock and would receive back the purchase price thereof, $150. She contends that, owing to such false representations, and also under and by virtue of the option given her so to do, she had the right to and did rescind such contract of purchase by tendering to defendant the certificate of stock purchased and demanding a return of the purchase money, which return was refused.

We have carefully considered all the evidence received upon the trial, and can find nothing therein which would warrant a submission to the jury of any question of fraudulent representations, because the representations claimed to have been made, if made, were of a nature such that they could not form the basis of a right to rescind the contract. There are thus left two questions: (1) Whether there was evidence to support the plaintiff's claim of an agreement whereby she had a right to rescind. (2) Whether such agreement is binding upon defendant.

While the evidence received is not as clear and definite as it would seem it should be in relation to what transpired between the plaintiff and the agents of defendant, yet there was evidence which, if believed by the jury, would have warranted it in finding that the stock was bought upon the condition that it could be returned and purchase price be refunded if plaintiff was dissatisfied with the purchase.. That such a condition attached to an ordinary sale of personal property would be valid and could be enforced, if the purchaser exercised his option within a reasonable time, is not and could not be questioned. Defendant, however, contends that the agent making the sale had no authority to attach such a condition to any sale made by him, and that therefore the condition is not binding; that the corporation had no power to enter into a contract of sale with such a condition attached, owing to the provisions of sections 425 and 436 of the Civil Code; and that therefore the condition is not binding. Said sections read as follows:

Section 425: "A corporation may out of surplus funds, by resolution of its stockholders or by their unanimous consent in writing, purchase, hold and transfer shares of its own stock in such manner and for such price as may be by them agreed upon."

Section 436: . "The directors of corporations must not make dividends except from the surplus profit arising from the business thereof; nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock. * * *"

Appellant contends that the condition attached to the sale of stock was in every respect ratified, before the sale was consummated by delivery of certificate of stock, by the secretary and manager of defendant; that, even if the attaching of such a condition to the sale was ultra vires as regards any authority vested in the sale agent or in such secretary and manager, the defendant cannot ratify the sale and repudiate the condition; that, even if the making of such a conditional sale was, under the statutes of this state, ultra vires as to the corporation itself, yet the corporation cannot repudiate the condition—the ultra vires features of the sale—and enforce the other provisions thereof.

[1] There was evidence tending to prove that the secretary and manager indorsed the contract as made by the sales agent, including the condition for rescinding; and it must be presumed that such secretary and manager had authority to enter into such a contract as the one in question, providing the defendant could have entered into same. If, as a matter of fact, such an officer as one who is known as secretary and manager had not authority to enter into a conditional stock sale, other than as such authority might be affected by statute, certainly the burden was upon defendant to establish such fact.

[2] This leaves but one question for serious consideration—the effect of the two sections which we have quoted from the statutes of this state. (Conceding that a contract on the part of a corporation, not entered into as required by the statutes, would be ultra vires, does it necessarily follow that such statute renders void a condition attached to a sale of personal property under which condition the purchaser has a right to rescind; and, even conceding that such statute does render such condition void, can

the corporation repudiate such condition and yet retain the purchase money, or is there such a failure of consideration as would authorize the rescission of the contract of sale?)

/ It must be remembered that this case involves no question of the rights of creditors of the corporation, nor of stockholders therein who had purchased stock subsequent to and in reliance upon the purchase by plaintiff; and therefore this case is not subject to the rules of law which controlled in the case of Melvin v. Lemar Ins. Co., 80 Ill. 446, 22 Am. Rep. 199, cited and relied upon by respondent. Let us suppose the condition had been one concededly valid, but for some reason the defendant was unable to or refused to perform same, could there be any question of the right of plaintiff to rescind the contract, not because the condition provided for a rescission, but because, through the failure of the condition, there was a failure of a material part of the consideration for plaintiff entering into the contract, which failure of itself would give a right to rescind the contract? But will a corporation be heard to say, when it has entered into a contract which has a condition that is ultra vires, but not immoral or against public policy, that it can ignore the condition and treat the remainder of the contract as valid; or will it be bound, either to recognize the condition as valid, or else itself rescind the contract and return any consideration received, except where, as in the Illinois case above referred to, the rights of creditors or other stockholders would estop the purchaser from enforcing the condition? ( We think that section 425 and 436, supra, were enacted solely for the protection of creditors and stockholders; and that corporations cannot hide behind them only when necessary to protect creditors or stockholders. )

In the case of Morville v. Amer. Tract Society, 123 Mass. 129, 25 Am. Rep. 40, it appeared that there was a contribution of funds to defendant corporation, which contribution was upon a condition subsequent, which afterwards failed, the condition being that the money should be returned if a certain sum total was not received by the corporation; and the contributor demanded the return of his money, which demand was refused. The court said: "The money of the plaintiff was taken and is still held by the

defendant under an agreement which, it is contended, it had no power to make, and which, if it had power to make, it has wholly failed on its part to perform. It was money of the plaintiff, now in the possession of the defendant, which in equity and good conscience it ought now to pay over, and which may be recovered in an action for money had and received. The illegality is not that which arises when the contract is in violation of public policy or of sound morals, and under which the law will give no aid to either party. The plaintiff himself is chargeable with no illegal act, and the corporation is the only one at fault in exceeding its corporate powers by making the express contract. The plaintiff is not seeking to enforce the contract, but only to recover his own money and prevent the defendant from unjustly retaining the benefit of its own illegal act. He is doing nothing which must be regarded as a necessary affirmance of an illegal act. The right to recover the money upon the implied promise, under like circumstances, has been heretofore recognized by this court. In White v. Franklin Bank, 22 Pick. 181, where an express contract was made by a bank for the payment of a deposit at a future day certain, against the prohibition of the Rev. Stats. c. 36, § 57, it was held that, while no action could be maintained by the depositor upon the express contract, yet he might recover back the money, without a previous demand, in an action commenced before the expiration of the title; the parties not being in pari delicto, and the action being in disaffirmance of the illegal contract. The general proposition that, where money is paid on a contract which is merely prohibited by statute, and the receiver is the principal offender, it may be recovered back was laid down in that case by Wilde, J., who declared it to be, not only consonant with principles of sound policy and justice, but to have been now settled by authority, whatever doubt may have been formerly entertained. 'To decide,' he adds, 'that this action cannot be maintained would be to secure to the defendants the fruits of an illegal transaction, and would operate as a temptation to all banks to violate the statute by taking advantage of the unwary, and to those who may have no actual knowledge of the existence of the prohibition.' "

In the case of Manchester, etc., R. R. Co. v. Concord R. R. Co., 66 N. H. 100, 20 Atl. 383, 9 L. R. A. 689, 49 Am. St. Rep.

582, which involved the right to set up as a defense that the contract sued upon was ultra vires, the court said: "There is, however, another ground of relief which should be briefly mentioned. The contracts have been executed on the part of the plaintiffs; they were not immoral; and they were illegal only so far as they were prohibited by statute. Taking this to be so, and regarding the parties as truly in pari delicto, the case still falls within the general rule that, 'if an agreement is legally void and unenforceable by reason of some statutory or common-law prohibition, either party to the agreement, who has received anything from the other party, and has failed to perform the agreement on his part, must account to the latter for what has been so received. Under these circumstances, the courts will grant relief, irrespective of the invalid agreement, unless it involves some positive immorality, or there are other reasons of public policy why the courts should refuse to grant relief in the case.' Morawetz on Private Corporations, § 721. He adds: 'These doctrines have been applied repeatedly in suits arising out of contracts entered into by corporations, although prohibited by statute or by the common-law; and, although the contracts were held illegal and unenforceable in those cases, a recovery was allowed to the extent of the consideration received'—citing White v. Franklin Bank, 22 Pick. (Mass.) 181 Dill v. Wareham, 7 Met. (Mass.) 438; Episcopal Ch. v. Episcopal, etc., Soc., 1 Pick. (Mass.) 372, 373; Whitney v. Peay, 24 Ark. 22; Philadelphia Loan Co. v. Towner, 13 Conn. 249; Foulke v. San Diego, etc., R. R. Co., 51 Cal. 365; Farmers', etc., Co. v. St. Joseph, etc., R. R. Co. [2 Fed. 117] 1 McCrary, 247; Madison Av. Baptist Ch. v. Baptist Ch., 73 N. Y. 82; Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Sacketts Harbor Bk. v. Codd, 18 N. Y. 240; Oneida Bk. v. Ontario Bk., 21 N. Y. 490, 496; Vanatta v. St. Bk., 9 Ohio St. 27; United States Express Co. v. Lucas, 36 Ind. 361. See, also, in addition, Pratt v. Short, 79 N. Y. 437, 445, 35 Am. Rep. 531; Owen v. Davis, 1 Bailey, (S. C.) 315; Gilliam v. Brown, 43 Miss. 641, 644; Western Union Telegraph Co. v. Union Pac. Ry. Co. [3 Fed. 423], 1 McCrary, 558, 562; Lewis v. Alexander, 51 Tex. 578; Brooks v. Martin, 2 Wall. 70 [17 L. Ed. 732], and cases cited:

Central·Trust Co. v., New York, etc., R. R. Co. [C. .C.] 23 Fed. 306; Parkersburg v. Brown, 106 U. S. 487,· 503. [1 Sup. Ct. 442, 27 L. Ed.; 238]."

A case which is upon all fours with the the case at bar, being one wherein stock was purchased with right of purchaser to· rescind and receive back. his money paid, is the case of Vent v. Duluth Coffee & Spice Co., 64 Minn. 307, 67 N. W. 70, wherein the court says:  "* . * * The only point raised by appellant worthy of consideration is the contention that the part of the contract by which defendant agreed to purchase or accept a surrender of its own stock is ultra vires and void. There is no express provision in its articles of incorporation authorizing .defendant to buy or deal in its own stock; and whether an original, independent contract, by which it agreed to purchase its own. stock, would be ultra vires, we need not consider.. This is not such a case. This provision of the contract constituted a material and substantial part of the consideration and inducement for the purchase of the stock by plaintiffs, and, if the provision is void, it seems to us that it vitiates the whole contract, and is a sufficient reason for the rescission of that contract and the return of the purchase price, which purchase price plaintiffs are demanding. But the better opinion, it seems to us, is that which holds the original contract to be a conditional sale, with the option to· revoke or rescind in the purchaser. In Browne· v.· Plow Works, 62 Minn. 90, 64 N. W. 66, we held that a similar contract was not ultra vires. There is no question here as to the rights of creditors. Order affirmed." See, also, 10 Cyc. pp. 1156 and 1158.

The judgment ·and order denying a new trial are reversed.