ROGERS, Respondent, v. STANDARD LIFE INS. CO.,
Defendant, (HOLMES, Intervenor, Appellant).
HOLMES v. STANDARD LIFE INS. CO., et al.

(222 N. W. 667.)

(File No. 6357. Opinion filed December 31, 1928.)

*W. J. Hooper,* of Gregory, for Appellant.

*Brown & Brown,* of Chamberlain, and *Charles A. Davis,* of Burke, for Respondent.

MISER, C. This appeal is from a judgment and order over-ruling the motion of appellant Holmes for a new trial in an action wherein respondent Rogers was plaintiff, Standard Life Insurance Company was defendant, and appellant Holmes was intervener. For the purpose of trial in circuit court, this action was consolidated with another. In the other action, Holmes was plaintiff and Standard Life Insurance Company and Rogers were defendants. Separate judgments were rendered on the decision of the court, and no appeal has been taken in the action in which Holmes was plaintiff, nor is the insurance company in any way a party to this appeal.

The trial court found the facts substantially as follows: Respondent Rogers owned a quarter section of land in Gregory county. Respondent's son owned an adjoining quarter section. On July 9, 1918, respondent and his son and their respective wives executed and delivered to Commonwealth Life Insurance Company their promissory note for $6,000, and to secure said note they executed a mortgage on the two quarter sections. Default having been made in the conditions of the mortgage, it was foreclosed by advertisement at a sale held on July 21, 1923, and the mortgaged premises bid in by the mortgagee; the quarter section owned by respondent being bid in for $4,131.12, the quarter section owned by the son being bid in for $3,500, and the aggregate of these two sums was the full amount claimed to be due under the mortgage, with costs and expenses at the time of sale. Although respondent was notified by the local attorney for the insurance company, prior to the commencement of the foreclosure proceedings, that the mortgage would be foreclosed unless the conditions of the mortgage were complied with, the first actual notice respondent had that the time for redemption would expire on July 21, 1924, was on July 17, 1924. On July 18th, respondent went from his home in Lemars, Iowa, to the office of Commonwealth Life Insurance Company, in Omaha, and there discovered that its business and assets had been taken over by defendant Standard Life Insurance Company. One Nation, assistant to the president of the latter company, was looking after the business of both companies. Respondent informed Nation that

he desired to redeem from the foreclosure of both quarters, but, inasmuch as his son had died, he preferred either an assignment of the sheriff's certificate of sale or to have the insurance company take deed and convey to respondent, he to pay the necessary redemption money and all costs. After a telephone conversation with the president of defendant company at St. Louis, Nation told respondent that the company would do as desired by respondent, the company taking sheriff's deed and then deeding to respondent; and that the transaction should be closed through their attorney at Dallas, S. D., who foreclosed the mortgage and who had the data as to amount necessary to redeem. On July 19th, respondent telegraphed to the sheriff of Gregory county and also to the attorney at Dallas for advice as to the amount necessary to redeem. The sheriff's reply stated the amount to be $7,469.30. Respondent immediately bought a draft for that amount for the purpose of making redemption. On the same day, but after the banks were closed, respondent received a wire from the attorney stating that $8,166.30 was the amount which would be due on July 21st, and suggesting that $8,200 be sent to cover incidental expenses, and that any balance would be returned. Respondent arrived in Dallas on the forenoon of Monday, July 21st, with the draft for $7,469.30. The attorney for the insurance company was out of town, but his office was in charge of one Slaughter. Respondent stated his mission to Slaughter, told of the deficiency in the amount of his draft, and requested him to telephone the attorney the substance of the arrangement with Mr. Nation at Omaha; that respondent was prepared to pay the deficiency and also all expenses incident to the company taking sheriff's deed and deeding the land to respondent. After telephoning as requested, Slaughter informed respondent that it would "be all right"; the draft could be left with him, and respondent would later be advised as to the additional amount to be remitted. Respondent left the draft as requested and returned to his home in Lemars, Iowa. On July 23rd, the attorney wrote the insurance company stating that, if the company so desired, he would take sheriff's deed and send it to the company, together with deed to respondent for its execution, and that, until hearing from the company, he would hold the draft. Before mailing this letter, the attorney received from appellant an offer of $9,000 for the land. The attorney advised Holmes of the steps taken by Rogers toward

redemption, but Holmes insisted that his offer be transmitted to the company. The attorney, accordingly, wrote another letter advising the company of Holmes' offer and recommending that the deal be completed with Rogers. Both letters were mailed in the same envelope. The insurance company advised their attorney that, if they were under no legal obligation to let Rogers have the land, the company was in favor of giving Holmes a quitclaim deed for $9,000. On receiving this reply, the attorney returned to Rogers his draft for $7,469.30; and, on July 30th, entered into a contract on behalf of the insurance company with Holmes, whereby, in consideration of $400 cash and $8,600 on September 10, 1924, the company agreed to deliver to Holmes a quitclaim deed to the premises. At the time of the execution of this contract, Holmes had actual knowledge of the equities and rights of Rogers in the premises and knew that Rogers was in possession of his quarter section of land and that his tenant, who was also occupying as tenant the quarter owned by the estate of respondent's son, had more than 100 acres of each tract under cultivation and in crops.

The court also found that, at all times since July 21, 1924, respondent has been ready, willing, and able to pay the full amount due for redemption, and all expenses incident to the manner of transfer agreed upon; that respondent relied upon the statements made by Nation at Omaha; that Nation was authorized to make said statements; that respondent relied upon the statements made by the insurance company's attorney, who was authorized to enter into any arrangements he thought advisable for completing the transaction as outlined by Mr. Nation; that, because of such reliance, respondent failed to redeem from such foreclosure; and that, by reason of such statements and respondent's reliance thereon, the company was estopped to deny respondent's right and claim to the land.

It was adjudged in the first action that respondent was the equitable owner of said premises, that the insurance company held the legal title thereto in trust for respondent, subject to the requirement that respondent should make the payments therein provided for, and that appellant was not a purchaser in good faith of the premises and had no interest therein. It is from this judgment and from the order denying appellant's motion for a new trial that this appeal is taken. The judgment in the action in which appel-

lant was plaintiff and in which the insurance company and respondent were defendants is substantially identical with the judgment in the first action, the sole difference being a provision that appellant should recover from respondent certain taxes paid by appellant on the day on which he contracted to purchase the premises. The insurance company has not appealed, but has complied with the judgment and procured the conveyance of the legal title to respondent pursuant to the judgment; no notice of appeal has been served upon the insurance company; and it is not in any way a party to this appeal.

 Appellant contends that the judgment in favor of respondent should be reversed because there was no evidence of authority in the agent at Omaha, in the president at St. Louis, or in the attorney at Dallas to bind the company by their acts and representations, nor evidence that the board of directors, in which is vested the authority to deal with the property of a corporation, had any knowledge of or ratified the acts of these agents. As to this contention, we are of the opinion that the evidence introduced supports the findings of fact that the agent at Omaha and the attorney at Dallas were authorized by the president to do all that each did to bind the company, and that there is at least a prima facie showing that the president had general charge of the company's business. In reviewing the evidence, we disregard, as presumptively the trial court did, all incompetent evidence. Hipple v. Strohbehn, 44 S. D. 102, 182 N. W. 535; Relf v. Cameron, 51 S. D. 554, 215 N. W. 881. Upon this evidence, the trial court rightly concluded that the insurance company was bound by the acts of these corporate agents; for, after the showing made by respondent of the authority of those agents with which he dealt, if the company was not bound thereby, "certainly the burden was upon appellant to establish such fact." Sweeny v. Underwriters Co., 29 S. D. 576, 137 N. W. 379; Lloyd & Co. v. Matthews, 223 Ill. 477, 79 N. E. 172, 7 L. R. A. (N. S.) 376, 114 Am. St. Rep. 346.

 Appellant next contends that the agreement between respondent and the agents of the insurance company was, at best, simply a parol agreement to convey real estate, invalid under section 856, R. C. 1919.

Respondent claims that the agreement in question was not an agreement for the sale of real property, but an agreement to permit

respondent to redeem by letting sheriff's deed run to the company and the company then executing deed to respondent. But we are of the opinion that, if the agreement was such a one as comes within the statute of frauds, the circumstances of the case nevertheless entitled respondent to specific relief.

Section 856 is, in part, as follows:

"No agreement for * * * the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

That an oral contract for the sale of real property, if partly performed, may be specifically enforced has been declared by this court in Karlsson v. Odland, 46 S. D. 350, 192 N. W. 758, and cases therein cited. As stated in Pomeroy's Eq. Jur. (4th Ed.) § 1409:

"The ground upon which the remedy in such cases rests is that of equitable fraud. It would be a virtual fraud for the defendant, after permitting the acts of part performance, to interpose the statute as a bar to the plaintiff's remedial right. The acts of part performance, therefore, in order to satisfy this principle, must be done in pursuance of the contract, and must alter the relations of the parties."

On the other hand, in Pomeroy's Eq. Rem. (2d Ed.) § 824, it is stated that:

"It is the generally accepted doctrine that payment of the whole or a part of the purchase price is not sufficient in itself to take a case out of the operation of the statute of frauds."

In this case, we have not only the delivery and acceptance of a draft for $7,469.30 and an understanding that, upon advice from the attorney as to the exact amount, the balance of $696, together with any additional expense of transfer, would be paid; but this thrice-bound agreement between the insurance company and respondent was made at a time when respondent not only might have redeemed, but also was ready, able, and fully intended to redeem unless the insurance company would make such a transfer. Relying on such understanding, respondent did not redeem. During the

eight days when his draft was held, without objections as to the amount or the sufficiency of the tender, the year for redemption expired. The mere restoration of the draft did not place respondent in statu quo, for a valuable right had in the meantime been lost. To sanction the taking of such an unconscientious advantage, through the forms and the technicalities of law, would be to sanction what virtually amounts to fraud. The breach of duty in failing to carry out the agreement with respondent under all the circumstances of this case was constructive fraud by the insurance company (section 817, R. C. 1919), and this despite the suggestion of its attorney that it did do as it agreed, an obligation which the company—when more fully advised of the facts—was willing to perform, but which appellant, with full knowledge of respondent's rights and equities, refused to permit. Having not only knowingly permitted respondent to pay over his money in part performance of their oral agreement, but also, by their oral agreement, having induced respondent to return to his home without making redemption, thereby altering their relations to respondent's detriment and to its advantage, as the insurance company well knew, it would be an equitable fraud to permit the insurance company or appellant to interpose the statute of frauds and thus secure the benefit of this fraud. Pom. Eq. Jur. (4th Ed.) 2239; Pom. Eq. Rem. (2d Ed.) 817. The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.

BROWN, J., disqualified and not sitting.