## REVALK *v.* KRAEMER.

A party cannot bring a suit in one Court, to restrain the decree of another Court of co-ordinate jurisdiction.

The separate property of the husband acquired before marriage, may become the homestead, as well as the common property of husband and wife.

As to the separate property of the wife—*quære.*

Where the homestead was claimed by the husband, on an action in which he was alone defendant, to foreclose a mortgage made by him alone, since marriage, neither the rights of the husband or wife could be affected by the proceedings in that case, the wife not being a party. Legal proceedings, to be conclusive against either, must embrace both.

A mortgage of a homestead, signed by the husband alone, is absolutely void where its value does not exceed five thousand dollars. When a husband ceases to be the head of a family, the right to a homestead also ceases.

A mortgage, void because it was upon a homestead, will not become valid, by reason of the homestead right being lost by the death of the wife of the mortgagor without children; the debt which the mortgage was intended to secure, is not impaired, but it is placed on the same level with the other debts of the mortgagor, and must be enforced in the same manner.

Any individual, whether married or not, may be the head of a family, and as such, entitled to a homestead right.

But when this relation ceases, the right also ceases.

APPEAL from the Superior Court of the City of San Francisco.

John Revalk was married in September, 1854, and he and his wife resided upon the premises in controversy, from that time until her death, in October, 1856. He owned the premises before marriage, and on the eleventh day of December, 1854, he alone executed to defendants Kraemer and Eisenhardt, a mortgage upon the homestead for four thousand dollars. The defendants brought suit to foreclose the mortgage in the Twelfth District Court, in which suit, John Revalk appeared and claimed the right of homestead; and by decree of the Court, the premises were directed to be sold, except a portion, which was set apart as a homestead. Before the sheriff proceeded to sell under

the decree, Revalk and wife brought this suit, to enjoin the defendants and sheriff from carrying the decree into effect. An injunction was issued, and the sale restrained. This case was tried before a jury, and a special verdict found; but while the Court had the verdict under advisement, Mrs. Revalk died, leaving no children. Her death being suggested by the attorneys of defendants, and admitted by the attorneys for the plaintiff, the Court rendered judgment against him, from which he appealed to this Court.

*Pixley & Smith, and L. Aldrich,* for Appellant.

The appellant presents to the Court the following points, upon which he submits that the judgment should be reversed:

*First*—The mortgage executed by the appellant was void. The statute by which the homestead is exempted from forced sale declares, " That no mortgage sale, or alienation of it, of any kind whatsoever, shall be valid without the signature of the wife, acknowledged separately and apart from her husband." According to the settled decision of this Court, any act of alienation of the homestead by the husband, without the concurrence of the wife, given in the manner already pointed out, is absolutely void, both as to husband and wife, to the extent of the value of five thousand dollars. In the case of Taylor v. Hargous, 4 Cal., 268, the Court say, with reference to the conveyance of the homestead by the husband alone, " the conveyance, by the husband alone, is declared by the statute to be void, and this rule cannot be subverted, unless it be in favor of an innocent purchaser without notice." In the case of Sargent v. Wilson, 5 Cal., 504, the general language of the first decision is, to some extent, qualified, and a mortgage upon the homestead executed by the husband, without the concurrence of the wife, is declared void as to the homestead value.

It results from these decisions, not only that the mortgage in question was absolutely void, both as to the appellant and his wife, but that the legal proceedings instituted for its foreclosure are inconclusive, either against the appellant or his wife, she not having been a party to these proceedings. This also results from the prohibitory provisions of the homestead law with regard to the conveyance of the estate, and from the policy and objects of the law, and also from the character of the homestead estate as it has been defined by the decisions of this Court. The husband, during the life of the wife, can do nothing to divest himself or the wife of the homestead estate, except with her assent, expressed in the manner already pointed out. It follows that legal proceedings, to be conclusive against either, must embrace both. If the law declares the alienation of the homestead by the husband, without the concurrence of the wife, absolutely void as against both, can it be said with any show of reason that

the husband may go into Court, in a proceeding against him alone, and concede away his rights in the homestead, or by his neglect properly to assert and defend them, or by the collusion with mortgagee, exclude himself from again setting them up ?

*Second*—The appellant submits that the cause of action survived to him upon the death of his wife, and that the Court below should have proceeded to render judgment in his favor. It will be seen by the opinion of the Court below, which appears in the record, that the Court did not regard the proceedings of the District Court as conclusive against either of the original parties to this suit, but based its judgment entirely upon the supposed validity of the mortgage in question rendered so by the death of the wife, and the supposed incapacity of the appellant to take by survivorship. Before presenting our views with regard to the right of appellant to take as survivor, we submit that, if the proceedings of the District Court were not conclusive as against either of the parties, and the Court below so regarded them, as appears by its opinion, whether the cause of action survived or not to the appellant, the Court should have proceeded to render judgment, *in conformity to the verdict*, notwithstanding the death of the wife, as though her death had not occurred. The rule of practice is, that, if a party die after verdict, and pending the time for argument or advisement, judgment may be entered on the verdict *nunc pro tunc*, as of a day when the party was alive. 2 Tidd's Practice, 845, 932, 933, 934; 2 Dunlap's Practice, 746; 8 Howard's Practice R., 244; 9 Vesey, 461; 4 Johnson Chancery R., 333; 1 Johnson's Cases, 411; note at the end of the case of Mackay *v.* Rhinelander; 12 Wendell, 245; 4 Cowen, 423. It is said in argument for respondents, that the rule invoked by the appellant applies only to cases at law. It will be seen, however, by reference to the authorities above cited, that the rule is applied to cases in chancery. It is said that the Chancellor refers the issues to the jury for his own information, and may disregard entirely the findings of the jury thereon, if he should deem it proper to do so. It is true that the Chancellor may disregard the findings of the jury, but it is rare so to do, and such disregard is always based upon manifest inconsistency between the testimony and the findings. It is not pretended that there was any such inconsistency in this case, and, fortunately for the appellant, he has the opinion of the Chancellor, showing his full recognition of the facts found by the jury, and especially the fact that the premises were the homestead of the appellant and his wife when the mortgage was executed, and basing its action upon those findings upon the grounds before stated.

To deny this right to take the homestead by survivorship, seems to us to be at war with the decisions of this Court, and with the humane purposes of the law. To strip the husband of

his property in the moment of his misfortune, and to allow creditors to seize upon the estate immediately upon the decease of his wife, is a doctrine which this Court cannot sustain, unless compelled so to do by the rigid provisions of the law. Suppose, upon the death of the wife, the husband should desire to bring about him other members of his family, his mother, his sisters, or other relatives, at what time must this be done ? According to the doctrine contended for here, the property may be instantly seized, and subjected to the claims of creditors, notwithstanding any such intention on the part of the husband.

The opinion of the Court below, so far as it was against this right of survivorship, was based entirely upon the fact, that in the tenth section of the Homestead Act there is no provision made for the husband upon the death of the wife, as there was for the wife, children, and next heirs-at-law, upon the death of the husband. It is sufficient to say, that no such provision was necessary. He was the head of the family. The homestead was permanently secured to him, unless it was parted with in the mode pointed out by law. The Legislature did not regard it as likely that any controversy would arise between him and an administrator, or that there would be any necessity of setting the homestead apart to him.

*Sidney V. Smith* for Respondents.

If the language of section fifteen of article eleven of the Constitution, directing the Legislature to protect the homestead, be attentively scanned, it will be seen that it authorizes the Legislature to protect a homestead which shall be created out of the common property, not one to be created out of the separate property of either husband or wife. The language is, "The homestead of all heads of families." That this is the correct meaning of that clause, is apparent when taken in connection with the previous section, which declares that a wife's separate property shall be preserved to her.

It is submitted that the decree of the Twelfth District Court, unappealed from, and in full force as it was when the first action was brought, was a complete bar to this action.

John Revalk, the husband, was duly brought into Court and defended for a homestead. He obtained one, not to the extent he sought, it is true, but still the Court awarded him one. Instead of moving for a new trial, or of appealing, he and his wife brought the present action.

In this action, by which the decree of the Twelfth District Court was stayed by the injunction of the Superior Court, the same issues were raised and tried as in the suit in the Twelfth District Court. The only difference was, that the parties were reversed, and Revalk's wife was joined as plaintiff.

Now, it is submitted that the husband, having appeared and

6

defended his alleged claim to homestead, such claim being not only for the benefit of himself, but of his wife, such defence enured to her.

When, therefore, the Twelfth District Court, sitting as a Court of Equity, with full knowledge of the marriage, and upon the defence interposed, decreed that Revalk and his wife were entitled to a part of the property as a homestead, but that the remaining portion was free of all claim of homestead, and should be sold to pay off the mortgage held by Kraemer & Eisenhardt, that decree should have been respected by the Superior Court, and the motion to dissolve the injunction should have been allowed.

It was purely an equity case. In the course of the proceedings, certain questions of fact were submitted to a jury, and a special verdict rendered by them. The cause was then left for future hearing before the Court. Before the day of hearing came on, the wife of appellant died, leaving no children. The fact of the death of the wife having been suggested to the Court, the Court thereupon gave judgment for defendants, respondents herein, and dissolved the injunction.

From this judgment the present appeal was taken. Admitting that the property in question was the homestead of the appellant, and was such at the time the mortgage was made by him to respondents, then, under the decision in Taylor *v.* Hargous, there was a joint-tenancy existing between appellant and his wife, with the right of survivorship.

When appellant made his mortgage to respondents, he had (by reason of the homestead) no present estate in the premises which he could then dispose or convey by way of mortgage.

The mortgage, therefore, though purporting to convey the land described in it, was invalid for that purpose, yet it was, as a contract between appellant and respondents, perfectly good; it was, in fact, a mortgage of an estate in expectancy, dependent upon his surviving his wife.

Upon the death of the wife of the appellant, by virtue of the doctrine of survivorship, the whole estate, legal and equitable, became immediately vested absolutely in him.

Now, both by the common law and by the thirty-third section of the act concerning conveyances, passed in 1850, any person who conveys land, the title to which is not in him at the time, if he afterwards acquire the title, such title immediately passes to the grantee, and the conveyance made to him has the same effect as if the title had been in the grantor at the time of the conveyance, and this upon the doctrine of estoppel.

The term "conveyance," by section thirty-six of the Conveyancing Act, embraces mortgages.

The consequence of the death of the wife, therefore, was immediately to give effect to the mortgage of respondents, not only as a contract of the husband, but as a lien on his property.

BURNETT, J., after stating the facts in the case, delivered the opinion of the Court—MURRAY, C. J., concurring.

The plaintiffs should have brought their suit in the District, and not in the Superior Court. When the plaintiff, John Revalk, appeared and answered in the case brought by defendants, Kraemer and Eisenhardt, to foreclose the mortgage, the plaintiffs in that suit—defendants in this—should have insisted that Mrs. Revalk be made a party. Revalk and wife not appearing in that suit, could not bring a suit in the Superior Court to restrain the decree of a Court of co-ordinate jurisdiction. John Ritts and wife v. Wm. Neely Johnson, and others, decided at the present term of this Court.

This would be sufficient to dispose of this case, but as other points are raised by the record, and discussed by counsel on both sides, and must be decided sooner or later, to settle this controversy, we will proceed to their examination.

The first point made by the counsel for the defendants is:

" That inasmuch as the property in question was owned by John Revalk before his marriage, and was therefore separate property, there could be no homestead created of it by the mere residence of the wife thereon, before marriage."

The fifteenth section of article eleven of the Constitution, provides, " that the Legislature shall protect, by law, from forced sale, a certain portion of the homestead and other property of all heads of families."

In this provision, the homestead to be protected, is called the property of the head of the family. And in the first and second sections of the act to exempt the homestead and other property from forced sale, (Com. Laws, 850,) the head of the family is called " the owner " of the homestead.

It would seem clear, from these provisions, that the separate property of the husband may become the homestead, as well as the community property acquired after marriage. It is the duty of the husband to furnish a home for the family, and the taking the wife to reside upon his separate property, is the voluntary act of the husband, and by this act he makes it the homestead, with all the incidents attached to it.

But it may admit of great doubt whether the separate property of the wife can become the homestead. There is an express provision of the Constitution which says, that all property of hers acquired in a certain manner, shall be her *separate* property. Article XI, § 14. There is no such provision in reference to the husband. This being a constitutional provision, it may admit of much doubt, whether the mere act of the wife, of residing with her husband on the premises, can be construed into a change of her right with respect to her separate property. It is her duty to live with her husband, and her removal with him from the homestead has been held no abandonment. 4 Cal. Rep., 273;

Selover v. American Commercial Company, January Term, 1857. Besides, there is no necessity for the Legislature to extend the right of homestead to the separate property of the wife, for the reason that it is already protected from forced sale, because it is hers. It is not responsible for the husband's debts, and can only be sold by the free consent of the wife. But in reference to this question, as it does not necessarily arise in this case, we do not express any decided opinion.

The second point made by the counsel of defendants is "that the action brought in the Twelfth District Court, for the foreclosure of the respondent's mortgage, and the decree made thereon, was a perfect bar to the present action."

The wife was no party to the suit in the District Court, and could not in any way be affected thereby; nor could the rights of the husband, as to the homestead, be affected by the proceedings in that case. When the husband appears alone and defends the suit, his right to the homestead is no more concluded by the decision, than by his separate execution of the deed or mortgage.

Legal proceedings to be conclusive against *either*, must embrace *both*. The separate answer of Revalk, for himself, did not constitute any defence.

If these views be correct, then the result of the mortgage suit did not conclude Revalk and his wife, or either of them. It is true that they were bound to bring their suit in the District Court if they wished to restrain the sale.

The third and last point made by the counsel of the defendants is : "That the death of the wife of appellant, gave the husband such an estate as enured to the benefit of the mortgage made by him alone, during his wife's life, to respondents."

This question may properly be considered under two aspects :

1. Whether the privilege of the homestead ceases, when the party ceases to be the head of the family.

2. Conceding that it does, in what manner would the title enure to the benefit of creditors ?

The leading idea, upon which the Constitution and statute are both predicated, is the *protection of the family*. To carry out this intent, the homestead of the head of the family is protected from forced sale. Any individual of either sex may be the head of a family. It is not necessary that the head of a family should be a married person.

But, unless the person is the head of the family, the right of homestead cannot exist. And cannot the same person, at one time, be the head of a family, and not at another ? And if the privilege is an incident to a certain *state*, and that state itself ceases, why should not the incident fall with it ? As the primary object of the law was the protection of the *family*, when the family ceases to exist the reason for the privilege is gone ; and why should not the privilege itself also cease ? As the *end* con-

templated by the law can no longer be attained, why should the means be preserved when they are no more wanted? As the law will not allow an individual the right of homestead *before* he becomes the head of a family, why should it allow him this right *after* he ceases to be such? The very reason why the law will not allow it in the one case, is equally applicable in the other. When an individual has not been, or has ceased to be, the head of a family, the law cannot anticipate that he will thereafter become such, in either case. When he does, in fact, become the head of a family, then the law protects him for *their* benefit. He is the representative of the family. But when there is no family to protect, will the law defeat the just claims of creditors for the purpose of accomplishing no beneficial end? It is true the party once had a family, and he also once had protection for that family; but since the family has ceased to exist, the protection is not needed. The law intended to protect individuals while bearing certain relations towards each other. When that relation ceases, the cause of the protection is gone. The reason ceasing, the rule ceases. The privilege and responsibility must go together. One is rightfully dependent upon the other. When the individual has no longer the cares of a family, the law should not still protect him as if he had; he should only be protected as others are, who are at present in the same state. The law does not look to his *past*, or *future*, but to his *present*, condition.

In the case of Taylor v. Hargous, 4 Cal. Rep., 273, the learned Judge who delivered the opinion of the Court, expressed the opinion that the right of the husband and wife to the homestead was a " sort of joint-tenancy, with the right of survivorship, at least as between husband and wife." This is, no doubt, true, as a general proposition; but still the parties do not stand precisely equal in every respect. Our statute and the Constitution have made some difference between them in reference to some particular.

While the husband lives, he is considered the head of the family; and upon his death, the widow takes that capacity, and all the incidents, privileges, and responsibilities, attached to it. Wood v. Wheeler, 7 Texas Rep., 13. But when the wife dies, the surviving husband takes upon himself no new capacity, but continues as he was before, the head of the family. It is true, that now he can alienate or incumber the homestead by his single deed. But when the wife survives, and there are legitimate children of the deceased husband, the homestead is directed to be set apart for *her and the children*. In such case, could she afterward *alone* sell or incumber the homestead? It is at least doubtful. If there be no surviving wife or children, then the homestead goes to the next heirs of the husband. (§ 10.) There is no such provision where the wife dies, and the husband survives.

Upon the death of the husband the homestead descends, exempt from his debts, by a special provision of the statute. Had it been the intention of the Legislature to have given the surviving husband the same exemption, whether he has or has not any family left, then this provision would not have been specially confined to the case mentioned, but would have been general, so as to embrace all. It is true the homestead may continue exempt from sale after the death of the wife, for the reason that the surviving husband may continue the head of a family. The protection is given to *that capacity,* and as that capacity continues, the protection does not cease.

If these views be correct, upon the death of Mrs. Revalk the surviving husband ceased to be the head of a family, and the protection of the former homestead also ceased.

We will now proceed to consider the question as to the manner in which the property would be liable to the debts of the surviving husband. In the case of Taylor *v.* Hargous, already referred to, it was said, " the conveyance by the husband alone, is declared by the statute to be void." In the case of Sargent *v.* Wilson and others, 5 Cal. Rep., 504, it was held that the deed in such a case, was not "*absolutely* void, but only as to the homestead value." See also Morse *v.* McCarty, July, 1856; and Poole *v.* Gerrard, January, 1856.

From these decisions it follows, that the mortgage is void only as to the homestead value. The mortgage being void as to the homestead value, it can never be rendered valid by any subsequent event. But while the mortgage itself is void, and but an incident to the debt, the debt remains good, and the property will be liable for the debt in the same way as if the mortgage never had been executed. In other words, the mortgagee stands upon equal footing with other creditors, neither in a better or worse condition on account of the mortgage.

Judgment affirmed.