HIRAM E. WALDO, APPELLEE, V. CHARLES W. LOCKARD
ET AL., APPELLANTS.

FILED JULY 11, 1914. No. 17,486.

1. **Specific Performance: EXCHANGE OF PROPERTIES.** In an action for
the specific performance of a contract for the exchange of real estate
and personal property, where plaintiff had performed the contract
on his part, and defendant had partly performed the same on his
part, the fact that the part which he was to perform, but refused
to do, consisted of the mutual invoice of a stock of goods, lumber and
coal would not of itself deprive plaintiff of the right to a decree of
specific performance.

2. ————. Where a substantial compliance with a contract for the
exchange of real estate and personal property had been made by both
parties to the contract, it is within the jurisdiction and power of a
court of equity to decree the completion of such contract by a decree
for specific performance.

3. ————. The written memorandum of a contract contained no pro-
vision that the deeds to the land involved in the litigation should
be subject to certain mortgages on each party's land, and the
parties thereafter met, and, in the presence of each other, dictated
to a scrivener the deeds to be executed, and executed them accord-
ingly, leaving them with a third party in escrow for delivery upon
the completion of the invoice and delivery of the property to be in-
voiced, the same being in furtherance of the contract of exchange.
The fact that the liens upon the land, excepted in the deeds, were
not referred to in the written contract will not, in the absence of
fraud or mistake, avail defendant as a defense to an action for specific
performance.

APPEAL from the district court for Wheeler county:
JAMES R. HANNA, JUDGE. *Affirmed.*

*Albert & Wagner* and *A. L. Bishop,* for appellants.

*H. C. Vail* and *J. R. Swain,* contra.

REESE, C. J.

This is an action for the specific performance of the
exchange of properties between plaintiff and defendant.
The pleadings are of considerable length, and we will make
no effort to set them out in full. A written memorandum

of an agreement was entered into between the parties, as follows:

"Agreement. Sale of Real Estate. This indenture made this 9th day of September, 1910, by and between C. W. Lockard, party of the first part, and H. E. Waldo, party of the second part, witnesseth: That the party of the first part has this day sold to the party of the second part the following described real estate, to wit, described in Memo B herewith attached, together with all appurtenances thereto attached, for which the party of the second part agrees to pay the sum of one dollar and other consideration described in Memo A herewith attached. The party of the first part is to furnish a warranty deed, a good and sufficient abstract of title, pay all taxes assessed against said land, and will give possession according to Memo B. In testimony whereof, the parties aforesaid have subscribed their names to (the date) above mentioned. C. W. Lockard, H. E. Waldo. Witness, Fred A. Cuscaden.

"Memo B. It is agreed that in invoicing each party choose an invoicer and all questions of unmarked goods to be left to said appraisers. Bldgs. 2 lots, 7 and 8 and 10 and lots 5-6 in block 8—6000.00. W back lots—100.00. Lumber at invoice price. General merchandise at invoice price. Hardware at invoice price, freight added. Coal at invoice price. Possession of property to pass at invoice time, not earlier than Oct. 10, 1910, or soon thereafter. Waldo agrees to furnish relinquishment, in case he cannot, then he agrees to pay $2,500 forfeit to C. W. Lockard. I agree to this stated inventory. H. E. Waldo. Witness, Fred A. Cuscaden.

"Memo A. 2 sec. of land 1 deed as follows, Sec. 25-22-9, 1 relinquishment, S. ½, S. ½, Sec. 13, N. ½, Sec. 24 and S. E. ¼ Sec. 24, all in 22, 9; 4 head horses, 2 brood mares, 2 mare colts, 10 head young cows, harness, all machinery belonging to place, consisting of 2 mowers, 2 rakes, 1 sweep, 1 stacker, 1 riding cultivator, 1 walking cultivator, 2 disks, 1 harrow, 1 wagon, 2 hayracks, feed grinder, small forge, also all of the hay except 10 ton, and all my share of the corn, except 500 bu. to be husked by Waldo, C. W.

Lockard to deliver share of corn on school section to lessee (1/3) of crop. C. W. Lockard."

A short time after signing of the agreement, the parties agreed to execute deeds and leave them in escrow with the Ericson State Bank, to be delivered by the bank to the proper grantees upon the completion of the invoice and delivery of the personal property. The deeds were accordingly executed September 26, 1910. It is alleged that plaintiff has performed all the conditions on his part to be performed, including the release of the homestead of 640 acres of land, and the filing thereon by defendant; that he caused his deed, together with the personal property mentioned in the contract, to be tendered to defendant, and demanded an invoice and a like transfer by defendant, but that his demand was refused. The prayer of the petition is for specific performance of the contract.

Defendant answered denying all unadmitted allegations of the petition; admitting the execution of the agreement for the exchange of properties, that plaintiff procured a relinquishment of the homestead entry of 640 acres of land, and defendant filed his homestead entry thereon, that the deeds were executed as alleged and placed with the Ericson State Bank to be held subject to the orders of the parties; alleging that defendant Mary C. Lockard executed the deed signed by her without any consideration therefor, that lots 7 and 8, in block 8, in Ericson, are and were the family homestead of defendants, and the deed therefore is, for that reason, void, and that the said agreement for the exchange was not signed by her. A trial was had to the district court, which resulted in a number of special findings, all of which are in favor of plaintiff, followed by a decree for specific performance. Defendants appeal.

It is not deemed necessary to set out the findings and decree at length, as it would extend this opinion beyond the usual and necessary limits. Among other things, it is ordered that the personal property be invoiced and the invoice returned into court within 30 days, which, it is claimed, is unusual and beyond the power of the court.

Other provisions and findings of the decree are objected
to, which will be briefly noticed. It is contended by appel-
lants that "the contract shown by the evidence is not suffi-
ciently definite and certain to sustain the decree," and 6
Pomeroy, Equity Jurisprudence (3d ed.) sec. 746, is
quoted to the effect that "for specific performance is re-
quired that degree of certainty and definiteness which
leaves in the mind of the chancellor or court no reasonable
doubt as to what the parties intended, and no reasonable
doubt of the specific thing equity is to compel done." So
far as this proposition is concerned, there is no specific
stock on plaintiff's then farm particularly described; but
the evidence of plaintiff is to the effect that the stock on
the farm was known by defendant, and the number of
head of horses and cattle specified in the contract, and of
the known quality, were left upon the farm when plain-
tiff was ready to surrender possession and when he actu-
ally removed therefrom, so that in that regard plaintiff
complied with his contract. It is true that the defend-
ant's stock of goods and other personal property in and
about his store, lumber and coal yards were not invoiced;
but the stocks were particularly named, and the quantity
of each were to be subject to invoice for the purpose of
ascertaining the value, the surplus of value, if any, to be
paid for by plaintiff, and, if the invoice fell short of the
agreed value, the deficiency to be made up by defendant.
The contract was entered into the 9th day of September,
1910. The method of making the invoice was agreed to,
and it was stipulated that the possession was to pass upon
the completion of the invoice, not earlier than October
10 of the same year. The value of the real estate of both
parties was agreed upon. Plaintiff agreed to release to
defendant his homestead entry on 640 acres of land, the
same to be taken by defendant, and to deed to him a section
of land to which he held the title. Plaintiff duly released
his homestead entry, and defendant filed thereon, and, so
far as is shown by the record, still holds his homestead
right to the land. The deeds were subsequently executed,
leaving blanks for the statement of the consideration to be

filled in after the completion of the invoice, both parties being present at the notary's office when the deeds were written, and each signed and acknowledged before the notary (each party and his wife signing the deed to be executed by them), and the deeds were placed in the bank in escrow for final delivery upon the completion of the invoice and filling the blanks as to consideration. This was done in furtherance of the agreement of September 9.

As to the contention that the contract is not definite and certain to warrant the decree of the district court, it must be admitted that it is not what such a contract should be, but the parties appear to have understood it fully, as shown by their subsequent conduct, and, since it has been performed by plaintiff and partly performed by defendant, and he has received and retained a part of the consideration, we are not at liberty to say that the contract is so indefinite as to prevent its enforcement by the courts.

The next proposition presented by defendant is that the evidence fails to show that plaintiff has performed or offered to perform his part of the contract. This is based upon the contention that (1) "he never delivered or offered to deliver the personal property which was part of the consideration moving from him, but delivered it to a stranger without authority." To this we cannot agree. It is conceded that he released the homestead right to 640 acres of land, and that defendant accepted the release and filed upon the land; his right thereto never having been questioned. Plaintiff testified that at the time he was removing from the farm he notified defendant of his intention to vacate the property, and that they agreed upon a suitable person to be left in charge, which was done as agreed. This was denied by defendant upon the witness-stand. The district court by its decree found that such an arrangement had been made, and, from all the evidence and circumstances shown, we are persuaded that the finding was correct. Certainly we cannot reverse the decree upon that ground. (2) "He never offered to invoice the stock," which, we assume, refers to the stock of goods,

lumber and coal named in the contract. Upon this part of
the case, we must conclude that plaintiff was not acting
under proper advice, for he procured his invoicer, but did
not exercise all the care which he might have done, had
he been acting under directions. It is true he, with an-
other, went to the store twice, one time found it closed,
the other time open, but no one in charge, at least no one
answered their calls. Defendant was absent from home
much of the time, and plaintiff failed to see him. It seems
to be assumed that it was the duty of plaintiff to offer to
make the invoice, but the duty was, in reality, upon the de-
fendant. Nothing could be plainer than that he did not
intend to make the invoice. (3) "He never surrendered,
or offered to surrender, possession of the section of land
he had agreed to convey to defendant. On the contrary,
about March 1, 1911, and after the contract was made,
he leased the land, and the personal property, to a third
party for a year, and the tenant was in possession when
the suit was tried." The conclusion here must rest upon
the decision of the district court, as well as our own, that
the plaintiff and defendant agreed that one Hemingway
should be placed in charge for defendant. This being
found to be true, there was no legal objection to Heming-
way remaining on the land until defendant discharged him
or terminated the possession. Acting upon the rule that
it was plaintiff's duty to so care for the property as to
make the damages as light as possible, he left Hemingway
in possession. He agreed with him on the terms of pos-
session, but subject to defendant. It was, to say the least,
rather an unusual course to pursue, yet, as plaintiff was
aware that defendant was seeking to repudiate the con-
tract, it is difficult to say what else he should have done.
Reasonable care and common fairness would seem to re-
quire that some action on the part of plaintiff would be
necessary in order to protect the property as nearly as
might be in its then condition.

It is said that in the memorandum agreement there is
no provision for the conveyance of any of the land sub-
ject to mortgages, yet, in the deeds as executed, plaintiff

takes his real estate subject to a mortgage of $900, and the one made by plaintiff to defendant is subject to a mortgage for $2,500. As we have seen, all parties were present at the time of the writing and execution of both deeds. They were well understood and acceptable to both parties at that time, and, no doubt, according to the previous agreement, which was not stipulated in the writings. Otherwise, objections should have been made when the deeds were read. The deeds, containing the clause referring to the mortgages, were dictated to the scrivener in the presence and hearing of all. We cannot see that the objection can avail defendants.

Finding no error in the decree of the district court, it is

AFFIRMED.