KARLSSON, Adm.; Respondent, v. ODLAND, Appellant.

(192 N. W. 758.)

(File No. 5119. Opinion filed March 14, 1923.)

1. **Specific Performance—Decedents—Administrators and Executors —Evidence Held to Support Finding of Contract Between Defendant and Decedent, as Claimed by Plaintiff.**

In an administrator's suit against decedent's father for specific performance of a contract alleged to have been made by the father to transfer to the son half of the father's farm on a certain payment, the contract being denied by defendant, who claimed that the deed was to be delivered on such payment only after the father and another were dead, evidence held to support a finding that the contract was made as alleged by plaintiff.

2. **Appeal and Error—Findings—Preponderance of Evidence—Finding of Trial Court Will Not be Disturbed, Unless Against the Clear Preponderance of Evidence.**

Findings of the trial court in suit for specific performance will not be disturbed on appeal, unless it appears from the record that there is a clear preponderance of the evidence against them.

3. **Specific Performance — Partial Performance — Oral Contracts — Statute of Frauds—Oral Contract, Partly Performed by Complainants, May be Specifically Enforced.**

An oral contract for the sale of real property, if partly performed by the party seeking the remedy, may be specifically enforced by courts of equity, notwithstanding statute of frauds, (Rev. Code 1919, Sec. 856.)

4. **Homestead—Exemption—Sale and Transfer of Possession Destroys Exemption.**

Where an owner of a homestead contracts to sell it, and places the purchaser in possession under a partly performed verbal contract of sale, the part so sold ceases to be the vendor's homestead, and becomes that of the purchaser.

Appeal from Circuit Court, Roberts County; Hon. Frank Anderson and Hon. B. A. Walton, Judges.

Action by August F. Karlsson, as administrator of the estate of Lars B. Odland, deceased, against Gudmund Odland. Judgment for plaintiff, and defendant appeals. Affirmed.

*Howard Babcock,* of Sisseton, for Appellant.

*Jorgenson & Anderberg,* of Sisseton, for Respondent.

(3) To point three of the opinion, Respondent cited: Stewart v. Tomlinson (S. D.), 112 N. W. 849; Stenson et al v. Elf-

mann et al (S. D.), 128 N. W. 588; Ballard on Real Property, Vol. 4, Sec. 778; Dawson v. McFadden (Neb.), 34 N. W. 338; Wylie v. Charlton (Neb.), 62 N. W. 220; Mourin v. Trainor (Minn.), 65 N. W. 44; Loney v. Loney, 38 Atl. 1071; Latimer v. Hamill, 52 Pac. 364; Pike v. Pike, 80 N. W. 5; Briggs v. Briggs, 71 N. W. 632; Welsh v. Welpely, 28 N. W. 744; 36 Cyc. 655; Nulton v. Harris, 29 Pac. 706; Putman v. Tinkler, 47 N. W. 687; Brown v. Hoag (Minn.), 29 N. W. 135; Irwin v. Dyke (Ill.), 1 N. E. 913; Russell v. Russell (Mich.), 53 N. W. 920; 21 C. J. 1160, cases cited; Scott v. Tommey (S. D.), 53 N. W. 841; Dickson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; Wampol v. Kountc (S. D.), 85 N. W. 595; Coleridge Creamery Co. v. Jenkins (Neb.), 92 N. W. 123.

SHERWOOD, J. This action was brought by August F. Karlsson, as administrator of the estate of Lars B. Odland, deceased, against Gudmund Odland, the father of Lars B. Odland, to enforce specific performance of a contract to convey real estate.

Prior to the spring of 1912, Gudmund Odland owned 80 acres of land in Sherburne county, Minn., and he and his son, Lars B. Odland, had farmed that and other lands together, in Minnesota, and each owned a part of the teams, tackle, etc., used in farming. In the spring of 1912 the father traded his 80 acres in Minnesota for the northeast quarter of section 4, township 128, range 52, Roberts county, S. D., subject to a mortgage on the Roberts county land of $2,200, and later Gudmund Odland bought the northeast quarter of the northeast quarter of section 11, in the same township and range. In the spring of 1912 the father, mother, and two sons moved onto the quarter in section 4, in Roberts county, and Lars and his father farmed that land together until February 2, 1915, when Lars was married. The younger brother, Jacob, was about 14 years old when the family moved to Roberts county in the spring of 1912.

Plaintiff claims that about the time of Lars' marriage, and to induce him to remain and work his father's farm, it was agreed between them that if Lars would remain, and build himself and family a home on his father's land, and pay a share of the crops, or $240 cash rent, each year, until he could pay his father $3,500, that when he paid the $3,500 his father would deed to Lars the.

south half of the northeast quarter of section 4, aforesaid, and a half interest in the northeast quarter of the northeast quarter of section 11, above described. It is further claimed by plaintiff that with the knowledge and consent of his father, and relying on said agreement, Lars took possession of said south 80; built a dwelling house thereon, 16x26, with 10-foot posts, erected on a cement foundation, with full basement; built a barn 26x36, with 12-foot posts, a granary 16x24; dug a well, erected a windmill, and built numerous other small buildings, such as coal shed, chicken house, and hog house, and a good and substantial fence on the premises; that such improvements, so placed on the land, were of the value of about $4,000; that Lars B. Odland continued to occupy this 80-acre tract up to the time of his death, and that prior to bringing this action the plaintiff had tendered to Gudmund Odland $3,500, and had since kept such tender good.

It is claimed by defendant that the entire northeast quarter of said section 4 was at all times Gudmund Odland's homestead; that he only leased the land to Lars; that Lars put the buildings there for his own use, and that they may be removed; and denies any agreement with Lars to convey any part of the land to him, and alleges that no contract or agreement, in writing, was ever made or signed by him agreeing to sell this land.

The judge, before whom the case was tried, found specifically on each issue in favor of the plaintiff, and awarded judgment to plaintiff as prayed in his complaint. Defendant excepted to each of the material findings of fact, on the sole ground that the evidence was not sufficient to justify the findings of fact or conclusions of law.

No citation of authority is made by defendant in his brief or argument. The sole question raised by this record is, "Did the evidence justify the findings that the contract was made as alleged by plaintiff?" And did plaintiff, in pursuance thereof, with the knowledge and consent of defendant, place these improvements on the land, and otherwise keep and perform the terms of his contract, so as to entitle his representative to have it specifically performed?

The defendant testified that the buildings placed by Lars on the land were worth $2,000 or $3,000, and that they cost more than that; that Lars paid for the lumber; that defendant knew

Lars was building the buildings on his land, and was willing he should do so; that his agreement with Lars was that, if he stayed at home and worked the land until his father and mother were dead, and took care of them, he was to have one-half of the land for $3,500. This was corroborated by both the mother and Jacob Odland, who were both witnesses for the defendant. In addition to this, the mother testified: She and her husband had agreed that the two boys were each to have one-half their land, and the boys were to pay the girls their share in cash, and that they had intended to make wills to that effect, but had never done so.

It will be seen defendant admitted that it was agreed each son was to have one-half the land, and the entire amount the boys were each to pay for their one-half was $3,500. The only disputed question of fact was whether Lars was to receive his deed when he paid the $3,500, or after his father and mother were both dead. Lars B. Odland died November 2, 1918, leaving a wife and infant daughter. Neither the father nor mother had made wills, nor given him, or made and filed any written contract, or statement, protecting him or his wife for their labor and investment on this land.

Lars and his family had occupied the 80 claimed as their home since 1916 and had no other home or homestead. Lars farmed the land alone, or in company with his brother, for 1915, 1916, and 1917. He paid to his father the share rent agreed on, in 1915 and 1916, and cash rent in 1917 and 1918, and for the year 1918 he farmed his 80 and the brother farmed the father's 80. They paid the taxes together, and the father repeatedly said to different people that the 80 in controversy belonged to Lars. From the time Lars built on the land, until after he died, the record does not show the father ever claimed this 80, but always spoke of it as Lars' land.

[1] We think there was ample evidence to sustain each of the lower court's findings of fact. There certainly was no clear preponderance of the evidence against the court's findings.

[2] It is settled law in this state that the findings of the trial court are presumptively correct, and will not be disturbed on appeal, unless, it appears from the record that there is a clear preponderance of the evidence against them. Steensland v. Noel, 28

S. D. 522, 134 N. W. 207, where a long list of South Dakota cases are given in support of this proposition.

[3] It is also settled law, in this state, "that an oral contract for the sale of real property, if partly performed, by the party seeking the remedy, may be specifically enforced by courts of equity," notwithstanding the statute of frauds (R. S. 1919, § 856). Fideler v. Norton, 4 Dak. 258, 30 N. W. 128, 32 N. W. 57; Stewart v. Tomlinson, 21 S. D. 337, 112 N. W. 849; Stenson v. Elfmann, 26 S. D. 134, 128 N. W. 588; Steensland v. Noel, 28 S. D. 522, 134 N. W. 207.

[4] It is sufficient answer, to defendant's contention that this entire quarter was Gudmund Odland's homestead, to say that when he contracted it to his son, Lars, in 1916, and put him in possession of the south 80 under his partly performed verbal agreement of sale, and when Lars built and established his homestead thereon, the 80 acres in controversy ceased to be a part of the father's homestead, and became Lars' homestead.

The judgment of the lower court is affirmed.

ANDERSON, P. J., not sitting.

Note—Reported in 192 N. W. 758. See American Key-Numbered Digest, (1) Specific Performance, Key-No. 121(6), 36 Cyc. 788; (2) Appeal and Error, Key-No. 1009(4), 2 R. C. L. 204, 4 C. J. Sec. 2853; (3) Specific Performance, Key-No. 41, 25 R. C. L. 258, 36 Cyc. 656; (4) Homestead, Key-No. 167, 29 C. J. Sec. 374.

On effect, in specific performance, to take out of statute of frauds contract to leave property to child in consideration of his living with promisor, see note in 44 L. R. A. (N. S.) 770.