CRAWFORD, Appellant, v. CARTER, Respondent

(37 N. W. 2d 241.)

(File No. 8988. Opinion filed April 21, 1949.)

Rehearing Denied May 18, 1949.

**Churchill & Churchill,** of Huron, for Appellant.
**Jon Fosheim,** of Huron, for Respondent.

SMITH, P.J.  The plaintiff's complaint prayed for judgment quieting his title in 1.04 acres of farm land against the claims of defendant.  The counterclaim of defendant prayed for specific performance of a described agreement of plaintiff to convey the acre to defendant.  Defendant prevailed and a judgment of specific performance commanding plaintiff to convey was entered.

The plaintiff's assignments of error on appeal present two contentions for our consideration, viz., (1) The verbal agreement set forth in the testimony of defendant is definite and uncertain in that it fails to describe the property to be conveyed ,and hence a judgment of specific performance was unwarranted, and (2) The acre is part of the homestead of plaintiff and his wife, the wife is not a party to the agreement, and is not a party to this action and hence a judgment of specific performance against the plaintiff husband is unwarranted because he is powerless to convey without her concurrence in his conveyance.

For a number of years plaintiff has owned and he and his wife have made their home on a farm located along the west side of Highway 37 a little more than a mile north of Huron.  Ninety-nine acres were first acquired, but at a later time the acre in question was added, thus rounding out the east 100 acres of a quarter section.  The entire farm was used by plaintiff and his wife in the business of raising hogs.  As a part of their operations, plaintiff collected garbage for use as hog feed.  The acre in question was used as a feed lot.

Defendant operated a repair shop and gasoline and oil station in rented quarters in Huron. Plaintiff was accustomed to go to defendant for truck repairs and parts, and for some of his gasoline and oil. After he had received notice to vacate the quarters he occupied, defendant approached plaintiff about establishing his business on a portion of plaintiff's farm. There is a sharp conflict in the evidence as to what was said between them. According to the version of defendant, in which he was corroborated by other witnesses, plaintiff said, "* * * he had been having more or less trouble with his pick-up, running out to fix up flat tires etc., juggling oil barrels and things like that. He stated he wasn't physically able to wrestle this stuff and he didn't know, if I quit business, how he would be able to keep his pick-up in running condition and if I would put up a garage and general repair shop and filling station so he could get his petroleum products and repairing done there he would give me the ground and I was to service his pick-up, and his tractor had steel wheels so he couldn't bring it down the highway, but he could bring it to me for anything he wanted. I would be right there on the ground. I stated it would be quite a job to put in water and put up buildings. He said he would furnish the tools and do everything he could do to get this place in operation,—the sooner we could get it to operating the better it would be. So I accepted his proposition."

Thereafter defendant expended several thousand dollars and considerable effort in erecting a filling station, a repair shop and a small home on plaintiff's property. The complaint alleges and the answer admits that defendant is in possession of the 1.04 acres described in plaintiff's complaint.

In entering its decision for defendant the trial court found that "on or about March 16, 1946, an oral agreement was made between the plaintiff and defendant to the effect that the defendant was to place upon the acre of land above described a filling station and automobile repair shop, including welding equipment, and in fact a removal of his business in the same line as had been conducted in Huron, South Dakota, and that the equipment on the property should also

include a residence property for the defendant and his family, and it was further agreed that when the defendant had placed such improvements upon said tract of land so that he was equipped to take care of plaintiff's truck and machinery as the same needed mechanical repair, and could furnish plaintiff with a source of petroleum products on said premises, that then plaintiff would deed said acre of land to the defendant. It being understood between the parties that the premises involved was that tract of land formerly surveyed and fenced off and used as a radio tower enclosure, which the Court finds is the same tract of land as above described."

■ In order for a court to decree specific performance of a contract whether oral or written, the contract must make the precise act, which is to be done clearly ascertainable. SDC 37.4602(6); Hollenbeck v. Prior, 5 Dak. 298, 40 N. W. 347; Steensland v. Noel, 28 S. D. 522, 134 N. W. 207; and Troutman v. Bock, 67 S. D. 569, 295 N. W. 637.

The foregoing principle furnishes the background for plaintiff's first contention, viz., that considered as a basis for a decree of specific performance the verbal contract is fatally uncertain in that it fails to describe the ground upon which the proposed business was to be established. The argument is that the conclusions and judgment rest on the erroneous finding, quoted supra, that on March 16, 1946, the parties agreed that the business was to be placed on the tract formerly fenced off and used as a radio tower, whereas in fact all that was said was "and if I would put up a garage * * * he would give me the ground".

■■ Although the record establishes the error of the trial court in making this central finding as to the terms of the agreement arrived at between the parties on March 16, 1946, we deem it error without prejudice. Admittedly a verbal agreement was entered into by the parties about the time fixed. The only conflict in the evidence is wheher it was an agreement to lease or to convey. In reliance upon whatever agreement was then made, defendant was put in possession of the acre described in plaintiff's complaint, and his acts in improving the property are referable solely to that agreement. The court resolved the only conflict in the

·evidence against plaintiff and found a contract to convey. That whcih was uncertain became certain as soon as plaintiff put defendant in possession of a plot of ground, and the infirmity in the contract to which plaintiff points was thereby cured. Hollenbeck v. Prior, supra; 49 Am. Jur., Specific Perform-ance § 115, p. 135; 58 C. J. § 115, p. 943; Mundy v. Irwin, 20 N. M. 43, 145 P. 1080, Ann. Cas. 1918D, 713; and Waldo v. Lockard, 96 Neb. 490, 148 N. W. 510. A court of equity does not look with favor on objections raised on grounds of un-certainty after a matter has advanced beyond the stage of contract and that which has been done in reliance on the contract not only makes the precise act which remains to be done clearly ascertainable but leaves the complaining party without an adequate remedy unless the contract be enforced. Pomeroy, Specific Performance of Contracts, § 145, p. 378.

The second contention, viz., That the acre is part of the homestead of plaintiff and his wife, the wife is not a party to the agreement, and is not a party to this action, and hence a judgment of specific performance against the plaintiff hus-band is unwarranted because he is powerless to convey without her concurrence in his conveyance, offers greater difficulty. The trial court disposed of the contention by (1) finding the acre was not a part of the homestead, (2) holding that plaintiff had a right, so long as he acted in good faith toward his family, to reduce the area of the homestead by the sale of such a tract, (3) by holding that plaintiff and his wife abandoned their homestead claims to the acre and are estopped to claim it as a part of their homestead, and (4) plaintiff failed to plead the homestead character of the property.

The following provisions contained in our statutes deal-ing with the family homestead are pertinent:

"If within a town plat it must not exceed one acre in extent, and if not within a town plat, it must not embrace in the aggregate more than one hundred sixty acres. * * *" SDC 51.1710.

"It may contain one or more lots or tracts of land with the buildings thereon and other appurtenances, subject to the limitations contained in this Code, but must in no case

embrace different lots and tracts unless they are contiguous, or unless they are habitually and in good faith used as part of the same homestead." SDC 51.1709.

"A conveyance or incumbrance of the homestead by the owner, if married and both husband and wife are residents of this state, shall be valid if both husband and wife concur in and sign or execute such conveyance or incumbrance either by joint instrument or by separate instruments." SDC 51.1703.

██ We digress to observe that the limitation as to value is not of significance here as it is only for the benefit of creditors. Hansen v. Hansen, 40 S. D. 114, 166 N. W. 427; O'Neill v. Bennett, 49 S. D. 524, 207 N. W. 543; and Peck v. Peck, 51 S. D. 157, 212 N. W. 872.

██ The first and fourth reasons put forward by the trial court in disposing of plaintiff's contention that the acre is part of his homestead are patently invalid and need not be labored. The evidence discloses without dispute that the whole 100-acre tract has been habitually and in good faith used as a part of the family homestead. SDC 51.1709, supra; Farmers & Merchants Nat. Bank v. Bank of Commerce, 49 S. D. 130, 206 N. W. 691; Edelman v. Scandrett, 67 S. D. 453, 293 N. W. 817. Although an issue on the homestead character of the property was not presented by the pleadings, that issue was tried without objection by the parties. In such circumstances an issue is "treated in all respects as if * * * raised in the pleadings", SDC 33.0914. Moreover, the trial court did in fact dispose of the issue on the merits.

In assigning its second reason for rejecting plaintiff's claim that the acre was part of the family homestead, the trial court turned to the case of Jensen v. Griffen et al., 32 S. D. 613 at 620, 144 N. W. 119, 122, 50 L. R. A., N. S., 1128. There it was written, "The head of the family has the right and power, when acting in good faith toward the family, to diminish the extent of the homestead by using a part thereof as the site for another dwelling to be sold or rented."

The quoted pronouncement would authorize the hus-

band, as head of the family, while acting in good faith, by his separate decision and acts in which the wife does not concur, to abandon a portion of their homestead. It has been suggested that this principle gains support from the holding of this court in Karlsson v. Odland, 46 S. D. 350 at 354, 192 N. W. 758, 759, wherein it was written, "It is sufficient answer, to defendant's contention that this entire quarter was Gudmund Odland's homestead, to say that when he contracted it to his son, Lars, in 1916, and put him in possession of the south 80 under his partly performed verbal agreement of sale, and when Lars built and established his homestead thereon, the 80 acres in controversy ceased to be a part of the father's homestead, and became Lars' homestead."

We believe it was the intention of the court to overrule the quoted language from Jensen v. Griffen when that cause was before it for a second time. Cf. Jensen v. Griffen et al., 41 S. D. 30 at 32, 168 N. W. 764. For the guidance of the trial court upon a second retrial of the matter it was then written: "If at the time of contracting for the material for the new house it was the intention of both husband and wife to erect it for nonhomestead purposes, then the mechanics' liens attached both to the building and the land upon which it was situated." And again in Smith v. Allmendinger et al., 41 S. D. 144 at 148, 169 N. W. 512, it was written: "We are of the view that the judgment of the trial court must be sustained, if sustained at all, solely upon the ground of estoppel as this property never lost its homestead character. It remained a homestead just as much after these representations were made by A. as before, unless the intent of A. and his wife had changed; the only effect that could be claimed for any such representation being that it estopped A. from claiming the existence of a homestead. * * * Of course if there was evidence under which the trial court would have been justified in finding, and upon which it had found, that, although this property had been the homestead of A. and wife, yet it had lost its homestead character from the fact that both A. and wife had intended to erect the new building for other than homestead purposes the whole

case would be changed." An later in the same opinion it was written: "It follows that, inasmuch as this tract of land was the homestead of A. and wife at the time this material was contracted for, if the wife intended this new house to be her home, it became a part of such homestead, even though A. made representations which would estop him from asserting that he intended the new house to be the home of himself and family. The trial court should have found the intent of both A. and his wife."

In any event, in so far as the first quoted holding in Jensen v. Griffen and that from Karlsson v. Odland, supra, have been understood as authority for the proposition that, apart from the doctrine of estoppel, either the husband or the wife may accomplish an abandonment of any part of the homestead without the concurrence of the other in the intention to abandon, they are hereby expressly overruled. A doctrine which would permit the owner of the homestead to abandon it without the concurrence of the owner's spouse, in our opinion, cannot be reconciled with the intention of the legislature expressed in SDC 51.1703 wherein it is provided that the concurrence of both husband and wife is essential to the validity of a conveyance or incumbrance of a homestead.

We are not unmindful of the fact that we are dealing with a rule of property. In our opinion, a present repudiation of the rule will be less harmful than its continuance. Brekke v. Crew et al., 43 S. D. 106, 178 N. W. 146.

Thus we are remitted to the fourth and final ground upon which the trial court rested in deciding the homestead issue. It found that both husband and wife had abandoned the acre as a part of the homestead, and both were estopped to claim it as a part of their homestead. Obviously, in making this finding, the trial court was not seeking to bind the wife who was not a party to the action. Its intention was to lay a foundation which would support a judgment against the husband specifically enforcing his agreement and commanding him to convey. We are convinced that the trial court attempted the impossible. Until the wife is bound by a conveyance or a judgment, the

validity of the commanded conveyance of the husband will remain open to question. As was said in Somers v. Somers, 27 S. D. 500, at 504, 131 N. W. 1091, 1093, 36 L. R. A., N. S., 1024, "It must be remembered that the statute of this state (section 3217, Rev. Pol. Code), requiring the spouse to join in the execution of a deed to a homestead, does not in any manner confer upon such spouse any estate in said land * * * but simply burdens this tract of land with a quality or condition by virtue of which it is impossible for the owner to make a valid deed without the spouse joining in the execution thereof." If in fact the wife has never intended to abandon this acre as a part of her homestead, and she is not estopped to claim it as a part of the family homestead, the judgment of the trial court against the husband alone and any conveyance based thereon will transfer no title, and the property will remain a part of the homestead of plaintiff and his wife. Sixkiller v. Wette, 175 Okl. 204, 51 P.2d 807; Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304; and Marks and Wife v. Marsh, 9 Cal. 96. And see 5 Williston, Contracts (Rev. Ed) § 1422, at page 3974. The trial court erred in proceeding without adding the wife as a party.

In Revalk v. Kraemer, supra, the California court said: "The wife was no party to the suit in the District Court, and could not in any way be affected thereby; nor could the rights of the husband, as to the homestead, be affected by the proceedings in that case. When the husband appears alone and defends the suit, his right to the homestead is no more concluded by the decision, than by his separate execution of the deed or mortgage.

"Legal proceedings to be conclusive against either, must embrace both. * * *"

A further proposition is advanced by the plaintiff in his reply brief. We are not convinced that this added proposition was presented in the trial court, and therefore we have failed to consider it.

The judgment of the trial court is reversed and the cause remanded with directions to bring in the wife of the plaintiff as a party to said cause.

ROBERTS and HAYES, JJ., concur.
RUDOLPH and SICKEL, JJ., dissent.

HAYES, J.  I concur in the opinion by Smith, P. J.

In addition to the views therein stated it appears to my satisfaction that the record in this appeal brings before us a question respecting the power and authority of the trial court to require specific performance of the agreement as found to have been entered into by the parties litigant. Whether appellant's assignments of error are sufficiently specific to raise the point is a question which need not be debated.  The point is one of law and especially relates to the cause of action upon which defendant relied and is therefore inherent in the case.

Although not argued at length by appellant's counsel, it is set forth in his brief that the only consideration plaintiff Crawford could expect to receive for his property, as a result of his understanding with defendant Carter, was a convenience or accommodation which would follow as a matter of course from the fact that the repair shop and service station defendant was to erect and operate would be within ready reach and thus spare plaintiff some work and running around he hoped to avoid.

It does not appear from the testimony of the parties, or either of them, that plaintiff was to receive any service or supplies from defendant free of charge.  The findings of the court reflect no agreement on defendant's part that as a consideration for plaintiff's undertaking to convey a valuable part of his farm to defendant the latter was obliged to keep in repair plaintiff's truck and tractor or either of them.  Nor is there any evidence from which the court could have found that the convenience or accommodation anticipated by plaintiff was to continue for a week or for a longer period.  Defendant did not agree to render to plaintiff any specific service whatsoever.

Altogether consistent with the understanding of the parties as related by defendant, and in accord also with the view that defendant was under no obligation to accommodate the plaintiff, defendant testified in substance that until

September 23, 1946, a few days after he had completed the business establishment, he had been willing to do repair work for plaintiff but that after said date he would do nothing for plaintiff unless in case of an emergency or as an errand of mercy. He further testified that he regarded his obligation as fulfilled when plaintiff could see that defendant was intending to operate there. Although it is reasonable to assume that both parties entertained the idea, when they entered into the agreement as found by the court, that business relations would be carried on between them at the new place after the fashion they had previously established, it cannot be said that the parties by their agreement reached an understanding whereunder defendant became obliged to render a certain service to plaintiff for a definite period of time. In the absence of an agreement about the matter plaintiff was left with but an appeal to the conscience of defendant for the realization of the convenience he anticipated when he granted to defendant permission to move onto his property.

Codifying rules long applying to the equitable remedy of specific performance are the provisions of SDC 37.4603. It is therein provided: "Specific performance cannot be enforced against a party to a contract in any of the following cases: (1) If he has not received an adequate consideration for the contract; (2) If it is not, as to him, just and reasonable; * * *". A few other states have similar statutory provisions. See Vol. V, Williston on Contracts, Revised Edition, page 4000, note 6, 49 Am. Jur., Specific Performance, § 65, and 58 C. J., Specific Performance, § 123. Notes treating the question of inadequacy of consideration are found in 14 L. R. A., N. S., 317 and 65 A. L. R. 86. The annotator of the later note places our state under what he defines as the minority rule and cites, together with similar rulings in a number of other states having statutes corresponding with ours, the case of Phelan v. Neary, 22 S. D. 265, 117 N. W. 142. In the cited case the code provisions quoted above were held to apply against one who sought specific performance of an alleged contract under which he claimed the right to purchase real property at about one-

third of its fair value. It was therein held that the enforcement of such a contract would not be as to the defendant, the landowner, either just, equitable or reasonable.

In the instant case it is the position of defendant that under his arrangement with plaintiff all he was required to do was to appropriate plaintiff's property to his own use as a place of business and homesite, and then receive a deed for the same. It is clearly evident from the testimony that these parties failed to agree upon the matter of consideration to plaintiff for the right to take his property. There was no meeting of the minds of the parties respecting this essential element of the agreement upon which defendant relied and which the trial court undertook to enforce.